UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| KATHERINE SUE JONES, ) | No. ED CV 15-915-PLA |
| ) | |
| Plaintiff, ) | |
| ) | **MEMORANDUM OPINION AND ORDER** |
| v. ) | |
| ) | |
| CAROLYN W. COLVIN, ACTING ) | |
| COMMISSIONER OF SOCIAL ) | |
| SECURITY ADMINISTRATION, ) | |
| ) | |
| Defendant. ) | |
| ) | |

**I.**

**PROCEEDINGS**

Plaintiff filed this action on May 9, 2015, seeking review of the Commissioner's denial of her application for Disability Insurance Benefits ("DIB"). The parties filed Consents to proceed before the undersigned Magistrate Judge on June 5, 2015, and July 13, 2015. Pursuant to the Court's Order, the parties filed a Joint Stipulation on March 10, 2016, that addresses their positions concerning the disputed issue in the case. The Court has taken the Joint Stipulation under submission without oral argument.

/

/

## II.

## BACKGROUND

Plaintiff was born on November 1, 1970. [Administrative Record ("AR") at 36, 127.] She has past relevant work experience as a medical record technician, a receptionist, a general office clerk, a data entry clerk, and a telemarketer. [AR at 35-36, 194.]

On February 28, 2012, plaintiff protectively filed an application for a period of disability and DIB, alleging that she has been unable to work since September 15, 2010. [AR at 27, 127.] After her application was denied initially and upon reconsideration, plaintiff timely filed a request for a hearing before an Administrative Law Judge ("ALJ"). [AR at 27, 88-89.] A hearing was held on July 11, 2013, at which time plaintiff appeared represented by an attorney, and testified on her own behalf. [AR at 48-60.] A vocational expert ("VE") also testified. [AR at 58-59.] On July 25, 2013, the ALJ issued a decision concluding that plaintiff was not under a disability from September 15, 2010, the alleged onset date, through July 25, 2013, the date of the decision. [AR at 27-38.] Plaintiff requested review of the ALJ's decision by the Appeals Council. [AR at 18-20.] When the Appeals Council denied plaintiff's request for review on March 13, 2015 [AR at 1-7], the ALJ's decision became the final decision of the Commissioner. See Sam v. Astrue, 550 F.3d 808, 810 (9th Cir. 2008) (per curiam) (citations omitted). This action followed.

## III.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. Berry v. Astrue, 622 F.3d 1228, 1231 (9th Cir. 2010) (citation omitted).

"Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1159 (9th Cir. 2008) (citation and internal quotation marks omitted); Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998)

2

(same). When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. Mayes v. Massanari, 276 F.3d 453, 459 (9th Cir. 2001) (citation omitted); see Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008) ("[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence.") (citation and internal quotation marks omitted). "Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." Ryan, 528 F.3d at 1198 (citation and internal quotation marks omitted); see Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006) ("If the evidence can support either affirming or reversing the ALJ's conclusion, [the reviewing court] may not substitute [its] judgment for that of the ALJ.") (citation omitted).

## IV.

## THE EVALUATION OF DISABILITY

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

**A.   THE FIVE-STEP EVALUATION PROCESS**

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995), as amended April 9, 1996. In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied. Id. If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting her ability

1  to do basic work activities; if not, a finding of nondisability is made and the claim is denied. Id.
2  If the claimant has a "severe" impairment or combination of impairments, the third step requires
3  the Commissioner to determine whether the impairment or combination of impairments meets or
4  equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R. part 404,
5  subpart P, appendix 1; if so, disability is conclusively presumed and benefits are awarded. Id. If
6  the claimant's impairment or combination of impairments does not meet or equal an impairment
7  in the Listing, the fourth step requires the Commissioner to determine whether the claimant has
8  sufficient "residual functional capacity" to perform her past work; if so, the claimant is not disabled
9  and the claim is denied. Id. The claimant has the burden of proving that she is unable to
10 perform past relevant work. Drouin, 966 F.2d at 1257. If the claimant meets this burden, a
11 prima facie case of disability is established. Id. The Commissioner then bears the burden of
12 establishing that the claimant is not disabled, because she can perform other substantial gainful
13 work available in the national economy. Id. The determination of this issue comprises the fifth
14 and final step in the sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at
15 828 n.5; Drouin, 966 F.2d at 1257.

17 **B.   THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**
18        At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since
19 September 15, 2010, the alleged onset date.[1] [AR at 29.] At step two, the ALJ concluded that
20 plaintiff has the severe impairments of left knee meniscus tear, fibromyalgia, fatigue, joint pain,
21 anxiety, and depression. [Id.] At step three, the ALJ determined that plaintiff does not have an
22 impairment or a combination of impairments that meets or medically equals any of the impairments
23 in the Listing. [Id.] The ALJ further found that plaintiff retained the residual functional

---

[1]  The ALJ concluded that plaintiff met the insured status requirements of the Social Security Act through December 31, 2015. [AR at 29.]

4

capacity ("RFC")[2] to perform a range of sedentary work as defined in 20 C.F.R. § 404.1567(a),[3] as follows:

> [C]an lift and/or carry 20 pounds occasionally and 10 pounds frequently; she can stand and/or walk for two hours out of an eight-hour workday with regular breaks; she can sit for six hours out of an eight-hour workday with regular breaks; she can occasionally perform all postural activities; she is precluded from climbing ladders, ropes, and scaffolds, squatting or crawling; she can perform simple tasks with simple work-related decisions; she can perform object oriented work; and she is precluded from working with the public.

[AR at 31.] At step four, based on plaintiff's RFC and the testimony of the VE, the ALJ concluded that plaintiff is unable to perform any of her past relevant work as a medical record technician, receptionist, general office clerk, data entry clerk, or telemarketer. [AR at 35-36.] At step five, based on plaintiff's RFC, vocational factors, and the VE's testimony, the ALJ found that there are jobs existing in significant numbers in the national economy that plaintiff can perform, including work as a "small products assembler" (Dictionary of Occupational Titles ("DOT") No. 706.684-022), and "assembler" (DOT No. 734.687-018). [AR at 37, 58-59.] Accordingly, the ALJ determined that plaintiff was not disabled at any time from the alleged onset date of September 15, 2010, through July 25, 2013, the date of the decision. [AR at 37-38.]

## V.

## **THE ALJ'S DECISION**

Plaintiff contends that the ALJ erred when he failed to articulate legally sufficient reasons for rejecting plaintiff's subjective symptom testimony. [Joint Stipulation ("JS") at 4, 13-23, 38-39.]

---

[2] RFC is what a claimant can still do despite existing exertional and nonexertional limitations. See Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989). "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." Massachi v. Astrue, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007) (citation omitted).

[3] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567(a).

As set forth below, the Court agrees with plaintiff and remands for further proceedings.

**A.   CREDIBILITY**

"To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis." Lingenfelter v. Astrue, 504 F.3d 1028, 1035-36 (9th Cir. 2007). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" Id. at 1036 (quoting Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). Second, if the claimant meets the first test, the ALJ may reject the claimant's testimony about the severity of her symptoms "only upon (1) finding evidence of malingering, or (2) expressing clear and convincing reasons for doing so." Benton v. Barnhart, 331 F.3d 1030, 1040 (9th Cir. 2003). Factors to be considered in weighing a claimant's credibility include: (1) the claimant's reputation for truthfulness; (2) inconsistencies either in the claimant's testimony or between the claimant's testimony and her conduct; (3) the claimant's daily activities; (4) the claimant's work record; and (5) testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which the claimant complains. See Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002); see also Ghanim v. Colvin, 763 F.3d 1154, 1163 (9th Cir. 2014); 20 C.F.R. § 404.1529(c).

Where, as here, plaintiff has presented evidence of an underlying impairment, and the ALJ did not find "affirmative evidence" of malingering [see generally AR at 31-35], the ALJ's reasons for rejecting a claimant's credibility must be specific, clear and convincing. Burrell v. Colvin, 775 F.3d 1133, 1136 (9th Cir. 2014) (citing Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012));[4] Brown-Hunter v. Colvin, 806 F.3d 487, 488-89 (9th Cir. 2015). "General findings [regarding a

---

[4] The Commissioner argues that "'clear and convincing reasons' is not the proper standard because it is contrary to 42 U.S.C. § 406(g) and does not give proper deference to the standard specified by the agency in Social Security Ruling 96-7p (requiring 'sufficiently specific [reasons] to make clear . . . the weight the adjudicator gave to the individual's statements and the reasons for that weight')." [JS at 18 n.5.] This argument is unpersuasive as, in fact, Burrell *explicitly rejected* the contention that the "clear and convincing" requirement has been excised by Ninth Circuit case law. Burrell, 775 F.3d at 1137.

6

claimant's credibility] are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." Burrell, 775 F.3d at 1138 (quoting Lester, 81 F.3d at 834) (quotation marks omitted). The ALJ's findings "'must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain.'" Brown-Hunter, 806 F.3d at 493 (quoting Bunnell, 947 F.2d at 345-46). A "reviewing court should not be forced to speculate as to the grounds for an adjudicator's rejection of a claimant's allegations of disabling pain." Bunnell, 947 F.2d at 346. As such, an "implicit" finding that a plaintiff's testimony is not credible is insufficient. Albalos v. Sullivan, 907 F.2d 871, 874 (9th Cir. 1990) (per curiam).

The ALJ summarized plaintiff's testimony as follows:

> The claimant testified that she is unable to work due to swelling and pain in her left knee, fibromyalgia, and fatigue. The claimant also testified she walked in on a home invasion robbery in September 2010. She indicated that during the robbery, she witnessed her roommate being beaten. The robber pulled a gun on her. She explained that she had to testify at the assailant's trial. She explained that she has been unable to work since the day of the robbery due to the mental stress, anxiety, and fear. She maintained she tried to work after the robbery, but she thought that people were watching her.
>
> The claimant maintained her impairments cause the following limitations: she has difficulty walking; she has decreased social interactions; and she is unable to lift more than 20 to 25 pounds. Concerning the claimant's self-reported medical treatments, she described that she has undergone three surgeries to repair her torn meniscus, without success. With regard to her mental impairments, the claimant described that she recently began attending therapy through a witness protection program.
>
> The claimant explained that she lives with four roommates. Concerning the claimant's activities of daily living, she testified that she takes care of her dog, prepares meals, performs light household chores, watches television, and visits with her daughter. She also described that she is able to drive, grocery shop, attend doctors' appointments. She claimed she only leaves her house once a week.

[AR at 31-32.] The ALJ found plaintiff's allegations concerning the intensity, persistence, and limiting effects of her symptoms to be "less than fully credible" for the reasons discussed below. [AR at 35.]

/

/

7

### 1. Daily Activities

The ALJ found that "despite her physical and mental impairments," plaintiff "has engaged in a somewhat normal level of daily activity and interaction," and that the physical and mental capabilities, as well as the social interactions "requisite to performing many of the tasks" -- that include taking care of her dog, visiting with her daughter, driving, preparing meals, doing light household chores, and grocery shopping -- "replicate those necessary for obtaining and maintaining employment." [AR at 32.] Plaintiff argues that she testified to having only "sporadic and limited ability to perform daily activities," and that her participation in those activities involves only "minimal physical effort," or activity that is "short in duration before a break is needed." [JS at 14, 15.] As such, she contends that her description of her daily activities "is far short of what is needed to demonstrate the capacity to perform work activity on a sustained basis." [JS at 15.]

Although plaintiff did indeed testify to engaging in these activities, the Court agrees that the ALJ's conclusion is misplaced in that it makes it appear as if plaintiff performs them extensively and without limitation. The record instead reflects that plaintiff testified only that her dog is a "kind of a therapy dog" and she takes him out in the morning after she gets up; she "tr[ies]" to entertain her daughter when her daughter visits; she makes her bed so that she will not "get back in it so much"; she makes sure she cleans up her dishes "because [she] live[s] with roommates"; she watches TV; she is able to drive; she goes to the doctor or the grocery store once a week; and she can only walk about four blocks. [AR at 54-56.] Plaintiff also noted that she is "in a lot of pain all the time, very fatigued"; she would prefer to sleep rather than get up and do anything; she has to sit down after taking a shower before continuing to get dressed; her depression keeps her from caring how she looks; she has severe pain when cleaning, vacuuming, or doing any other home chores; and she can no longer take walks or stand for any length of time. [AR at 53, 183.] These sorts of limited activities do not suggest that plaintiff was being disingenuous when she testified that her conditions, and the pain they caused, as well as her depression, prevent her from working. See, e.g., Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir. 2001) ("This court has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her

credibility as to her overall disability."). Moreover, the ALJ's conclusory suggestion that these limited activities "replicate" the physical and mental capabilities necessary for obtaining and maintaining employment is rejected as the ALJ failed to articulate or provide any analysis as to how this is so, or even to specify *which* daily activities he found to be inconsistent with *which* work-related tasks. Burrell, 775 F.3d at 1138; see also Gonzales v. Sullivan, 914 F.2d 1197, 1201 (9th Cir. 1990) (holding that daily activities may not be relied upon to support an adverse credibility determination unless the ALJ makes explicit how plaintiff's ability to perform those activities translates into the ability to perform appropriate work activities on an ongoing and daily basis).

Nor do these daily activities provide support for the ALJ's conclusory statement that plaintiff's daily activities -- as *actually* described by plaintiff -- demonstrate that plaintiff "has engaged in a somewhat *normal level* of daily activity and interaction." [AR at 32 (emphasis added).] Thus, these stated reasons do not provide substantial grounds for contradicting plaintiff's claims of debilitating impairments. See Molina, 674 F.3d at 1113.

Based on the foregoing, the ALJ did not provide specific, clear and convincing reasons relating to plaintiff's daily activities to reject plaintiff's subjective symptom statements.

**2.      Lack of Psychiatric Treatment**

The ALJ also rejected plaintiff's subjective symptom allegations of her mental impairments by noting that there is no evidence plaintiff was ever hospitalized at a psychiatric hospital; she only briefly attended therapy; and although plaintiff "recently began attending therapy through a witness protection program," she did not previously seek "no-cost treatment alternatives, such as treatment at a mental health clinic," and "it is unclear why" plaintiff did not seek such alternatives earlier if her mental impairments were as severe as she alleges. [AR at 32.]

These statements also lack the support of substantial evidence. In fact, there is evidence in the record that plaintiff *was* seen at the AMHS ETS Crisis Stabilization[5] unit on December 30,

---

[5]      Based on the address and phone number provided by plaintiff, it appears this refers to the Orange County Adult Mental Health Services Crisis Stabilization Unit in Santa Ana, California.

2011, and evaluated for depression; and that she also was hospitalized on that same date at U.C. Irvine due to depression with possible suicidal ideation, and released on December 31, 2011. [See AR at 159-60; see also, e.g., AR at 238, 440 (patient informed her treating physicians that she was hospitalized in December 2011 for a nervous breakdown).] The record also shows that plaintiff was treated in the emergency room at Huntington Beach Hospital for a severe panic/anxiety attack on May 21, 2012, and was administered Ativan -- an anti-anxiety medication -- intravenously. [AR at 159; see also AR at 240 (May 22, 2012, report noting that plaintiff had an episode of "whole body muscle tightening up with near syncope yesterday. She couldn't move [and] [w]as taken to ER via paramedics; released with dx of anxiety/panic attacks").][6] While it may be true that these hospitalizations were not "at a psychiatric hospital," they nevertheless appear to be psychiatrically-related incidents resulting in hospitalization.

With respect to plaintiff's limited attendance in therapy, plaintiff told her treating physicians that after her hospitalization in December 2011 for a nervous breakdown, she has been "[f]ollowed closely by [her] PCP bec[ause] [insurance] does not offer psychiatry coverage." [See, e.g., AR at 238, 440.] Thus, although she was not receiving therapy, plaintiff's mental health was being closely followed and monitored by her primary care physician. [AR at 154.] As noted by the ALJ, plaintiff's medications were "regularly adjusted," and she had recently started receiving therapy again through the victim witness program. [AR at 32, 34, 56.] Failure to receive medical treatment during a period when a plaintiff has no medical insurance, or lacks funds to obtain treatment, "cannot support an adverse credibility finding." Orn v. Astrue, 495 F.3d 625, 638 (9th Cir. 2007) (quoting Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989)); see also Gamble v. Chater, 68 F.3d 319, 321 (9th Cir. 1995).

Based on the foregoing, these were not specific, clear and convincing reasons to discount plaintiff's subjective symptom testimony.

/

---

[6] The Court notes that the record does not appear to contain any of the treatment records from the AMHS ETS Crisis Stabilization unit, from U.C. Irvine, or from Huntington Beach Hospital.

### 3. Routine, Conservative, and Effective Treatment with Medications

The ALJ also discounted plaintiff's credibility noting that she received only "routine and conservative treatment with medications." [AR at 32.] Additionally, the ALJ found that plaintiff's medications were "relatively effective in controlling" her symptoms, and on a "number of occasions," plaintiff told her rheumatologist that her pain and fibromyalgia symptoms "decreased with her medications." [Id. (citations omitted).]

An ALJ may properly rely on the fact that only routine and conservative treatment has been prescribed. Johnson v. Shalala, 60 F.3d 1428, 1432 (9th Cir. 1995). "Conservative treatment" has been characterized by the Ninth Circuit as, for example, "treat[ment] with an *over-the-counter pain medication*" (see, e.g., Parra v. Astrue, 481 F.3d 742, 751 (9th Cir. 2007) (emphasis added); Tommasetti v. Astrue, 533 F.3d 1035, 1040 (9th Cir. 2008) (holding that the ALJ properly considered the plaintiff's use of "conservative treatment including physical therapy and the use of anti-inflammatory medication, a transcutaneous electrical nerve stimulation unit, and a lumbosacral corset")), or a physician's failure "to prescribe . . . any serious medical treatment for [a claimant's] supposedly excruciating pain." Meanel v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999).

The record shows that at the time plaintiff applied for benefits she was prescribed Diazepam for anxiety, Paroxetine for depression, Flurazepam and Propranolol for sleep, Imitrix for migraines, and ibuprofen and Meloxicam for pain.[7] [AR at 154.] She also reported receiving cortisone injections and gel injections, and taking allergy medication. [Id.] The ALJ noted that plaintiff "has been prescribed and has taken appropriate medications for her fibromyalgia and joint pain, which weighs in [her] favor," but also noted that "[o]n a *number* of occasions," plaintiff admitted that her pain and symptoms of fibromyalgia "decreased" with her medications. [AR at 32 (citing AR at 440, 475) (emphasis added).] A review of the two "occasions" cited to by the ALJ

---

[7] The record shows that at other times plaintiff was treated with Cymbalta (depression), Ativan (anxiety), Xanax (anxiety), Paxil (depression), Elevil (depression), Vicodin (pain), Norco (pain), Plaquenil (pain), Ambien (sleep), Carisoprodol (pain), Zolpidem (sleep), and Gabpentin (pain). [See, e.g., AR at 202, 204, 312, 627, 631.]

shows that at one visit, plaintiff reported that her fibromyalgia pain was "*improving* on Savella, Plaquenil and new diet" [AR at 475 (March 15, 2013, progress note) (emphasis added)], and at the other visit she reported that Savella had improved her "overall pain," and that Gabapentin and Soma are "*somewhat* effective." [AR at 440 (May 15, 2013, progress note) (emphasis added).] Notwithstanding these reports, on March 12, 2013, just three days prior to one of the progress notes referenced by the ALJ, plaintiff reported that her pain was a 7 on a scale of 10 [AR at 473], and on July 9, 2013, she was given a referral for physical therapy and to pain management for treatment options "due to [her] continued increased pain and reported pruritis [itching] from narcotic medication." [AR at 597.] Thus, these reports show little more than that plaintiff was seeing some unquantified improvement of her pain with her medications. Additionally, the ALJ failed to articulate what other treatment, if any, was currently recommended or available for plaintiff's physical and mental impairments.

Based on the foregoing, the ALJ's findings that plaintiff's treatment had been routine and conservative, and that plaintiff's treatment was "relatively effective" based on two ambiguous reports she made to her doctors, were not specific, clear and convincing.

### 4. Objective Evidence

The ALJ also found that plaintiff's "subjective complaints are less than fully credible and the objective medical evidence does not support the alleged severity of symptoms." [AR at 35.] Plaintiff argues that this statement is always "legally insufficient" to find a claimant not credible [JS at 11] and "contravenes established case law and regulations." [JS at 10.] She argues that "the ALJ must not show he disbelieves [plaintiff's] story; it is that the ALJ must find [plaintiff] not credible as a witness." [JS at 12 (citations omitted).]

As the Ninth Circuit recently held, "an ALJ's 'vague allegation' that a claimant's testimony is 'not consistent with the objective medical evidence,' without any 'specific finding in support' of that conclusion, is insufficient." Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1103 (9th Cir. 2014) (citation omitted). The "ALJ must identify the testimony that was not credible, and specify 'what evidence undermines the claimant's complaints.'" Id. (citation omitted); Brown-

Hunter, 806 F.3d at 493. In short, "[t]his is not the sort of explanation or the kind of 'specific reasons' we must have in order to review the ALJ's decision meaningfully, so that we may ensure that the claimant's testimony was not arbitrarily discredited," nor can the error be found harmless. Id. at 493 (rejecting the Commissioner's argument that because the ALJ set out his RFC and summarized the evidence supporting his determination, the Court can infer that the ALJ rejected the plaintiff's testimony to the extent it conflicted with that medical evidence, because the ALJ "never identified *which* testimony [he] found not credible, and never explained *which* evidence contradicted that testimony") (citing Treichler, 775 F.3d at 1103, Burrell, 775 F.3d at 1138). In this case, the ALJ did not specifically identify the testimony he found not credible and "link that testimony to the particular parts of the record" supporting his non-credibility determination. Brown-Hunter, 806 F.3d at 494.

Additionally, while a lack of objective medical evidence supporting a plaintiff's subjective complaints is one factor that an ALJ can consider in evaluating symptom testimony, it cannot provide the only basis to reject a claimant's credibility. See Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997); Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005) ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor the ALJ can consider in his credibility analysis."); accord Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001). As discussed above, the Court found that the ALJ's other reasons for discounting plaintiff's credibility were not specific, clear and convincing and, therefore, even assuming that the objective evidence in fact fails to support plaintiff's subjective symptom allegations, this reason by itself is not a sufficient basis for discrediting plaintiff's testimony.

Thus, this was not a specific, clear and convincing reason for discounting plaintiff's credibility.

**5. Conclusion**

Based on the foregoing, the ALJ's credibility determination was not "sufficiently specific," clear and convincing, to allow this Court to conclude that the ALJ rejected plaintiff's testimony on permissible grounds and did not arbitrarily discredit her testimony regarding pain and fatigue.

13

Brown-Hunter, 806 F.3d at 493 (quoting Bunnell, 947 F.2d at 345-46). Remand is warranted on this issue.

**B.     REMAND FOR FURTHER PROCEEDINGS**

The Court has discretion to remand or reverse and award benefits. McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989). Where no useful purpose would be served by further proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. See Lingenfelter, 504 F.3d at 1041; Benecke v. Barnhart, 379 F.3d 587, 595-96 (9th Cir. 2004). Where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find plaintiff disabled if all the evidence were properly evaluated, remand is appropriate. See Benecke, 379 F.3d at 593-96.

In this case, there are outstanding issues that must be resolved before a final determination can be made. In an effort to expedite these proceedings and to avoid any confusion or misunderstanding as to what the Court intends, the Court will set forth the scope of the remand proceedings. First, because the ALJ failed to provide specific, clear and convincing reasons, supported by substantial evidence in the case record, for discounting plaintiff's subjective symptom testimony, the ALJ on remand shall reassess plaintiff's subjective allegations and either credit her testimony as true, or provide specific, clear and convincing reasons, supported by substantial evidence in the case record, for discounting or rejecting any testimony. Finally, the ALJ shall reassess plaintiff's RFC and determine, at step five, with the assistance of a VE if necessary, whether there are jobs existing in significant numbers in the national economy that plaintiff can still perform.[8]

/

/

---

[8]     Nothing herein is intended to disrupt the ALJ's step four finding that plaintiff is unable to return to her past relevant work.

## VI.

## CONCLUSION

**IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**; (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant for further proceedings consistent with this Memorandum Opinion.

**IT IS FURTHER ORDERED** that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

**This Memorandum Opinion and Order is not intended for publication, nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis.**

DATED: March 16, 2016

　　　　　　　　　　　　　　　　　　　　　　PAUL L. ABRAMS
　　　　　　　　　　　　　　　　　　　　　　UNITED STATES MAGISTRATE JUDGE